**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VIRGINIA GAYLE NORRIS** | **CIVIL ACTION NO.** |
| **VERSUS** | **JUDGE: _____** |
| **ACADIANA CONCERN FOR AIDS RELIEF, EDUCATION, AND SUPPORT, INC. D/B/A ACADIANA C.A.R.E.S.** | **MAGISTRATE-JUDGE: _____** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

The Complaint of Virginia Gayle Norris, a resident of the full age of majority of Caddo Parish, Louisiana, respectfully represents:

1.

Jurisdiction is founded herein pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1367 affording supplemental jurisdiction over Petitioner's claims arising under Louisiana law. Venue is proper within this judicial district as the employment records relating to Petitioner are located in this judicial district and the defendant is located within this judicial district.

2.

Made defendant herein is Acadiana Concern for Aids Relief, Education, and Support, Inc. d/b/a Acadiana C.A.R.E.S. (hereinafter "Acadiana C.A.R.E.S."), a Louisiana non-profit corporation domiciled in Lafayette Parish, Louisiana, which is justly and truly indebted unto Petitioner for all sums as are reasonable under the premises, liquidated damages as allowed pursuant to the ADEA, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, and all such other relief to which Petitioner is entitled at law or in equity.

1

3.

On December 3, 2001, Petitioner became employed with defendant Acadiana C.A.R.E.S. as a Field Surveillance Epidemiologist in what was, at the time, the HIV/AIDS Program (HAP) administered by the State of Louisiana, Department of Health and Hospitals, and later became the STD/HIV Program (SHP) under the Louisiana Department of Health and Hospitals. Petitioner was assigned to Regions 7 and 8, largely located in the Northern part of the State of Louisiana. At all pertinent times, defendant was Petitioner's "employer" within the meaning and intent of the ADEA, Title VII, and La. R.S. 23:967 and employed greater than 100 "employees", including Petitioner.

4.

Acadiana C.A.R.E.S. holds a long-time contract with the State of Louisiana, through SHP which provides for collection of data related to HIV positive individuals throughout the State of Louisiana. That Program, set out in the Louisiana Public Health – Sanitary Code, LAC, Title 51, Sect. 101, et al., provides for the collection of personally identifiable health information for all persons within the State of Louisiana who test positive for the HIV virus. HIV positive status is defined as a "Reportable Disease and Condition" under Sect. 105 of the Sanitary Code, LAC, Title 51. Under no circumstances is the reporting of an HIV negative result reportable under the law without compliance with HIPAA and, specifically, the informed consent of the individual. Under the Sanitary Code provision, once an individual produces an HIV positive lab result, Petitioner and others holding her position collect personally identifying health information, without the consent of the individual, and then transmit that information, including the fact of a positive HIV test to Acadiana C.A.R.E.S. and to the State of Louisiana. That information is uploaded by Petitioner and others holding her position onto the State of Louisiana database.

Thereafter, under the Sanitary Code, state health officers and/or their designees then contact the HIV positive individual in an effort to obtain possible sexual partners and infection information.

5.

Given the stigma associated with and the gravity of the information obtained, specifically, that it is the HIV positive status of an individual, the State and Acadiana C.A.R.E.S., in accordance with the person's clearly established right of privacy and HIPAA, must take all steps necessary to insure protection of that information. Under Louisiana law, after obtaining the personally identifiable health information on an HIV positive individual, that person's name and identifying information is then entered into a State database under the auspices of SHP where it is accessible and kept forever.

6.

Under HIPAA, the only manner by which the personally identifiable health information of an HIV positive individual may be obtained, without that individual's knowledge or consent, is pursuant to 45 CFR 164.512: to a public health authority that is authorized by law to collect or receive such information for the purpose of preventing or controlling diseases, . . . and the conduct of public health surveillance, public health investigations, and public health interventions. Notwithstanding the ability of a public health authority, including its contracted entities, to obtain HIPAA protected information without consent, it may do so only under the narrow circumstances established by law. Here, Louisiana established the parameters of that "permission" at LAC Title 51, Louisiana Sanitary Code, Part II, The Control of Diseases. In this case, the State of Louisiana, SHP is a public health authority which contracted with Acadiana C.A.R.E.S.

7.

On or about July 31, 2017, Petitioner was assigned a new supervisor, Susan Brodie. Thereafter, at all pertinent times, Brodie was Petitioner's supervisor with immediate and successively higher authority over Petitioner.

8.

Almost immediately after becoming Petitioner's supervisor and during her first visit with Petitioner, Brodie asked Petitioner about her age, then, 69 years and then Brodie asked her "how much longer are you planning on working." Petitioner responded, "until I'm carried out feet first or can no longer find my way to the office". Brodie reacted unfavorably toward Petitioner following Petitioner's response. Thereafter, Brodie made repeated inquiries of Petitioner's co-workers regarding Petitioner's age, whether or not they believed Petitioner should retire, and when was Petitioner going to retire. Brodie also continued to make similar age-based comments to two (2) of Petitioner's co-workers who were similar in age to Petitioner. Petitioner alleges the comments were frequent and occurred at least bi-weekly throughout this period of time. Ultimately, of the defendant's employees over the age of 65 years and in Petitioner's position, two (2) of the three (3), including Petitioner, were improperly placed on a supervisory plan/probation.

9.

Petitioner contends that defendant discriminated against her because of her age and in violation of the ADEA for which she sues for herein.

10.

On July 16, 2018, Petitioner timely filed Charges of Discrimination with the EEOC and LCHR and received the attached Notice of Right to Sue. All conditions precedent to suit under the ADEA have been met and/or complied with.

11.

Petitioner shows that shortly after her hire, Brodie began requesting that Petitioner provide protected health information, including reasons for testing/diagnosis of all persons, including children less than 13 years of age, who had been HIV tested, but whose results were negative and, in the cases of babies, even those whose mothers were not HIV positive at birth.  Petitioner told Brodie that she could not obtain or provide that information because it violated HIPAA and Louisiana law, specifically, LAC, II, Title 51 of the Sanitary Code.  Specifically, Petitioner advised Brodie that because the persons were HIV negative, there was no basis upon which she could lawfully obtain the information as to why those persons were tested and, further, that she would not enter a diagnosis or reason for testing into the SHP database because to do so would violate Federal and Louisiana law as well  as the privacy rights of those persons who, in turn, would forever be identified on that database.

12.

In response to Petitioner's protests and opposition to the unlawful request by Brodie to obtain personally identifiable information, to-wit, a diagnosis/reason for the testing, on HIV negative persons, Brodie threatened Petitioner that she had to do so, or she would lose her job.

13.

Petitioner continued refused her refusal to obtain diagnoses or reasons for HIV testing on HIV  negative persons as that information would violate HIPAA and become a part of the State database.

14.

Shortly thereafter, Brodie questioned Petitioner about an entry in Petitioner's work documentation involving a patient who had been administered an HIV test but had tested negative.

5

Brodie insisted that Petitioner log that patient's diagnosis/reasons the person was tested into the database and Petitioner refused. Brodie ordered Petitioner to contact the patient's physician and inquire why the HIV test was administered, using her credentials as an affiliate with the Louisiana Office of Public Health to require the physician to provide the information. Petitioner refused citing the fact the patient was HIV negative and that to obtain the patient's information and enter it onto the database was a violation of Federal (HIPAA) and State (LAC Title 51 and Rights of Privacy) laws. In response, Brodie advised that the inquiries and obtaining the information as to why the HIV test had been administered was part of her job and Petitioner's failure to do so would equate to severe repercussions. For example, on October 26, 2017, during a telephone conversation, Brodie told Petitioner she had to include a diagnosis for an HIV negative patient even if the treating will not disclose on the non-HIV infected patient, that if the physician will not do that, Petitioner is to review the patient's chart, herself, or get the name of who Petitioner spoke with and she, Brodie, will get the information.

15.

Petitioner contacted various officials with the Louisiana Office of Public Health, including Dr. Martha Whyte, Regional Medical Director/Regional Administrator, Region VII, OPH, on November 2, 2017. Dr. Whyte responded by email dated November 2, 2017, to Petitioner, Brodie, Brodie's supervisor, and Jessica Fridge regarding the orders which had been given to Petitioner by Brodie and which violated Federal and State laws. For her part, Dr. Whyte with the Louisiana Office of Public Health confirmed Petitioner was correct in that the requests violated the law stating: "nothing in HIV statistics or monitoring require you to have more information about the [HIV negative] patient's medical information".

6

16.

On November 3, 2017, following Petitioner's in person visit to Dr. Whyte and others, Brodie sent a threatening email to Petitioner stating: "I have reviewed the email sent by Dr. Whyte yesterday.  The management of this program, Dr. DeAnn Gruber, Director of the HIV/STD Program, Asst. Deputy, Chaquetta Johnson, NP, and Surveillance Manager, Jessica Fridge are also aware of the email and have had discussion.  We need to discuss what you truly understand and what is expected in proper documentation and investigation. . . .on November 6, 2017.

17.

By email dated November 6, 2017, Brodie wrote to Petitioner,  confirming the aforementioned earlier phone conversation between Brodie, Petitioner, and Fridge.  During that phone conversation and as confirmed by Brodie's email,  defendant threatened Petitioner ordering her to obtain from  the health care provider the reason the HIV test was administered and "[I]f a facility or provider is reticent about disclosing information you are to document a name, date and time of who you spoke with."  Defendant further threatened: "[Q]uestions about practices and work tasks of the SHP program are to be address (sic) by supervisors and managers of SHP. Contacting other employee (sic) who do not have a bearing on the work performed at SHP may cause undo confusion and harm established relationships". . . "C.A.R.E.S. Human Resources or CEO are not to be used as a resource to address any questions or concerns regarding supervisory directives.  Those questions shall be address to Jessica Fridge after we have had discussion on the subject."  Defendant then generated and disseminated to Petitioner a two (2) page document entitled: "Field Epidemiologist Documentation Protocol Disposition: Not Infected."  In that document defendant ordered Petitioner to obtain HIPAA protected information on individuals who

7

are not HIV positive and then enter that person's information into the database – a violation of Federal and Louisiana law.

18.

Also, on November 15, 2017, defendant issued a Bulletin to Petitioner and her co-workers. In it, defendant gave "examples" of all of the information it wanted gathered and logged into the database, including as it related to HIV negative children and HIV negative individuals who were on PrEP (an HIV preventative after possible exposure) but were HIV negative from testing. As it related to the HIV negative PrEP recipients, defendant ordered Petitioner and her coworkers enter the sexual orientation of the patient and: "include PrEP start date, if available. This field can also include risk information regarding the person". Defendant then instructed, as Ex2: "PrEP follow-up. No information on PrEP start date. Chart notes patient has male sexual partners." Petitioner ceased entering information on PrEP as that, too, was a violation of HIPAA and Louisiana's privacy laws.

19.

As the situation in Petitioner's working environment continued to escalate, including defendant threatening Petitioner with termination if she did not obtain the non-HIV infected patient's information. On November 29, 2017, Petitioner again contacted defendant's HR Thornton inquiring how she should file her grievance regarding the unlawful workplace acts and practices. On December 4, 2017, Petitioner filed a formal grievance with defendant and with Louisiana SHP regarding the unlawful workplace acts and practices violating patients' rights under HIPAA and Louisiana law.

20.

In response to and retaliation for Petitioner's repeated protests and oppositions to the unlawful practices and, specifically also in response to Petitioner's grievance, defendant placed Petitioner on a supervisory plan/probation through June 2, 2018, pending her termination. Also, on June 21, 2018, Petitioner's probation/supervisory plan was extended to August 1, 2018. Petitioner was falsely reprimanded on December 4, 2017 by defendant and through Brodie.

21.

When presented with the supervisory plan/probation, Petitioner responded that it was retaliatory, to no avail.

22.

On December 18, 2017, Petitioner's grievance was met with a required meeting between Petitioner, DeAnn Gruber, Louisiana SHP, and Chaquetta Johnson, Louisiana SHP. During that meeting, Petitioner again reported the unlawful requests that she obtain and log into the database personally identifiable patient information from HIV negative individuals. During that meeting, the State employees Gruber and Johnson refused to discuss the unlawful requests and, instead, by letter dated December 22, 2017, held that the supervisory plan would be upheld.

23.

Petitioner thereafter inquired about her grievance, including its status, which was ignored.

24.

Defendant intensified its unlawful requests for information adding that Petitioner was now required to "investigate" all CD-4 tests and why these tests were requested. CD-4 tests are ordered for non-HIV purposes, including as it relates to possible cancer and infection. In other words, simply because an individual had a CD-4 test that does not mean they were being tested for HIV

status, nor are the results of that test or the original reason therefor cognizable within the confines of the law. Petitioner even hired an attorney to provide a written opinion regarding the illegality of the conduct set forth herein and presented it to defendant, to no avail.

25.

Following Petitioner's refusals to engage in the afore-described unlawful acts and her reports/protests and grievance regarding same, defendant began further harassing Petitioner because of her protected activities.

26.

Although the supervisory plan/probation required defendant to present an agenda for each telephone meeting to account for Petitioner's job performance on a bi-monthly basis, neither an agenda or even regular bi-monthly contacts were undertaken by defendant deliberately jeopardizing her employment. Yet, as written and presented, failure to comply with the supervisory plan meant termination of Petitioner's employment.

27.

From January, 2018 – Petitioner's termination on August 7, 2018, defendant made repeated requests that Petitioner violate the law by requiring Petitioner to pull the medical chart of patients, use her State credentials to essentially force medical personnel to identify the specific non-HIV condition of their patients, log into the State database and record the diagnosis and specific reason for every HIV and CD-4 test administered even though the patients were not HIV positive. In other words, defendant required Petitioner to enter protected information on every person in this State who had an HIV test or a CD-4 test in this State regardless of whether or not he/she was HIV positive.

28.

Each time defendant demanded that Petitioner unlawfully obtain the HIPAA-protected and privacy protected information on patients and then download in onto the State database, Petitioner refused and told defendant that the attainment of the information was illegal under Federal and State law. In response, defendant threatened Petitioner by falsely accusing her of being insubordinate and disrespectful and was facing serious consequences.

29.

On June 21, 2018, in response to Petitioner again refusing to obtain the diagnosis of a non-HIV positive patient and then log it into the State database in late May, 2018, defendant, through Brodie responded in retaliation/reprisal by extending the supervisory plan/probation (which was supposed to have ended June 2, 2018) and threatening that Petitioner must obtain the information or face serious repercussions, including termination. Again, Petitioner reported the on-going, illegal requests to her supervisors and to the State SHP, to no avail.

30.

On July 13, 2018, Petitioner refused to provide any further information regarding four (4) non-HIV positive children. In so doing, Petitioner entered into the database that the patients were not HIV positive and added: "Under Federal law, I am required to limit disclosure of HIPAA protected information. As the information requested does not fit within the parameters of what we are allowed to access and report, I cannot disclose any further information except other than what I've already reported." In response to each entry, defendant, wrote: "Gayle, I need a differential Dx/specific reason for testing" even though the patient was not HIV positive and neither was the mother at birth.

31.

By email dated July 13, 2018, defendant, through Brodie threatened: "Let me be clear 'rule-out' paired or not with mom is negative is not sufficient documentation." However, the children at issue were not HIV positive and neither were their mothers, as originally indicated.

32.

Petitioner refused to elicit any further diagnosis or information regarding these non-HIV positive children/patients and on August 7, 2018, was terminated in reprisal for refusing, protesting, and reporting unlawful actions to her employer and the State of Louisiana consisting of HIPAA violations and violations of Louisiana's Sanitary Code and privacy rights. Petitioner contends defendant's action in harassing her and terminating her employment because she engaged in the aforementioned protected activities constituted unlawful reprisal within the meaning and intent of La. R.S. 23:967 for which Petitioner sues defendant for herein.

33.

Petitioner also shows that she sent formal demand to defendant on September 7, 2018, to no avail.

34.

As a result of the situation sued upon herein, Petitioner sustained damages which include, but are not limited to, severe emotional distress and mental anguish, humiliation and embarrassment, lost wages and benefits, loss of earning capacity, medical/psychological expenses, compensatory losses.

35.

Defendant's behavior regarding Petitioner's age which constituted age-based discrimination/harassment was deliberate and in wanton and reckless disregard for her rights.

Petitioner contends defendant is liable unto her for liquidated damages under the ADEA and for which she sues for herein.

36.

Petitioner contends defendant is liable to her for attorney's fees pursuant to the ADEA and La. R.S. 23:967, for which she sues for herein.

37.

Petitioner is entitled to and desires an award of all such other relief afforded her at law or in equity.

38.

Petitioner is entitled to and desires trial by jury of this matter.

WHEREFORE, Petitioner, Virginia Gayle Norris, prays for trial by jury and after due proceedings are had that there be Judgment herein in her favor and against defendant, Acadiana Concern for Aids Relief, Education, and Support, Inc., for all sums as are reasonable under the premises, liquidated damages as allowed by law, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, and all such other relief to which she is entitled at law or in equity.

Respectfully submitted,

By: ____s/Jill L. Craft_____
Jill L. Craft, T.A., #20922
W. Brett Conrad, #37639
Attorney at Law, LLC
330 Government Street
Baton Rouge, Louisiana  70802
(225) 663-2612
jcraft@craftlaw.net
bconrad@craftlaw.net